UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ANTHONY MUSE | Case No. |
| Plaintiff, | |
| | Judge |
| vs. | |
| TRUST ROOFING, INC. | |
| ROBIN SHERER, | |
| WINNIE SHERER | |
| Defendants. | |

**VERIFIED COMPLAINT**

1.  This is an action brought by Plaintiff Anthony Muse against Defendant Trust Roofing, Inc. Robin Sherer and Winnie Sherer to recover unpaid overtime wages, liquidated damages, and other relief pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. Plaintiff also brings claims for retaliation under Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), and a state law claim for unjust enrichment under the common law of the State of Florida.

1.  Plaintiff was employed by Defendants as a "Production Coordinator" from approximately January 16, 2023, until his wrongful termination on or about March 28, 2024.

2.  Throughout his employment, Defendants willfully misclassified Plaintiff as an exempt "executive" employee under the FLSA, thereby depriving him of

1

overtime compensation to which he was legally entitled for all hours worked in excess of forty (40) hours per workweek.

3. During the course of his employment, Plaintiff consistently worked extensive overtime hours, often ranging from sixty (60) to seventy-seven (77) hours per week, without receiving the overtime premium pay required by federal law. When Plaintiff exercised his protected right to demand compensation for unpaid wages, Defendant terminated his employment in direct retaliation for his protected activity.

4. Defendant's violations of the FLSA were willful, as evidenced by Defendant's knowledge of applicable wage and hour laws, its deliberate decision to misclassify Plaintiff despite knowing his actual job duties did not satisfy any FLSA exemption, its explicit statements to employees regarding "work arounds" for overtime obligations, and its prior involvement in similar wage and hour litigation with at least one other employee.

5. Pursuant to the willfulness of Defendant's violations, Plaintiff seeks recovery for all unpaid overtime wages dating back three (3) years from the date of the filing of this Complaint, together with an equal amount in liquidated damages, attorneys' fees, costs, and all other relief to which Plaintiff may be entitled under the law.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), as this action arises under the Fair Labor Standards Act, a federal statute.

7. This Court has supplemental jurisdiction over Plaintiff's state law claim for unjust enrichment pursuant to 28 U.S.C. § 1367(a), as such claim is so related to the federal claims within this Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district. Specifically, Defendant's principal place of business is located at 2322 Lake Ave SE, Largo, Florida 33771, which is within the Middle District of Florida. Additionally, Plaintiff performed his work duties and services for Defendant within this district.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

10. Plaintiff Anthony Muse is an individual who, at all relevant times, resided at 6045 E Daly Lane, Inverness, Florida 34452. Plaintiff was employed by Defendant Trust Roofing, Inc. as a Production Coordinator from approximately January 16, 2023, through March 28, 2024.

11. Defendant Trust Roofing, Inc. is a Florida corporation engaged in the business of roofing services, with its principal place of business located at 2322 Lake Ave SE, Largo, Florida 33771. Defendant's Federal Employer Identification Number is 84-3714441. Defendant may be reached at telephone number (813) 560-2998.

12. At all times relevant to this Complaint, Defendant Robin Sherer served as the Owner and Chief Executive Officer of Trust Roofing, Inc. Mr. Sherer exercised operational

control over the company, including but not limited to making decisions regarding employee compensation, classification, work schedules, hiring, and termination. Mr. Sherer directly supervised Plaintiff and communicated the company's expectations regarding Plaintiff's work hours and compensation.  Under 29 U.S.C. § 203(d): the individual met the definition of an "Employer".

13. At all times relevant to this Complaint, Winnie Sherer served as an Owner of Trust Roofing, Inc. and participated in decisions regarding employee compensation, including the decision to deny Plaintiff's request for payment of unpaid wages. Under 29 U.S.C. § 203(d): the individual met the definition of an "Employer".

14. Defendant Trust Roofing, Inc. is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), in that it has employed one or more employees, including Plaintiff, who have been engaged in commerce or in the production of goods for commerce.

15. Defendant Trust Roofing, Inc. is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that Defendant: (a) has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (b) has had annual gross volume of sales made or business done in excess of $500,000.

16. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## FACTUAL ALLEGATIONS

*A. Plaintiff's Hiring and Initial Employment Terms*

17. Plaintiff Anthony Muse was hired by Defendant Trust Roofing, Inc. on or about January 16, 2023, to serve in the position of "Production Coordinator." Prior to his hire date, Plaintiff was interviewed by Robin Sherer, the Owner and CEO of Trust Roofing, Inc.

18. During the pre-employment interview, Robin Sherer represented to Plaintiff that the Production Coordinator position would be a salaried position. Mr. Sherer specifically communicated that Plaintiff's expected work schedule would be "roughly 7 AM to 3 PM or 3:30 PM depending on time spent on lunch," with the understanding that salary compensation was structured so that "post duties could be handled as necessary until the work was completed."

19. Based on these representations, Plaintiff understood and reasonably believed that his regular work schedule would approximate forty (40) hours per week, with occasional flexibility as needed to complete specific tasks.

20. At the commencement of his employment, Plaintiff was paid a salary of $1,300.00 per week. Defendant paid Plaintiff on a weekly basis after a one-week delay.

21. Defendant provided Plaintiff with a hiring letter that outlined his pay and the duties he was hired to perform.

22. Following a one-week training period, Plaintiff began working independently. At the end of Plaintiff's third week of employment with Defendant, Defendant increased Plaintiff's salary to $1,500.00 per week, equivalent to

$78,000.00 per year. This salary rate was reflected in Plaintiff's pay stubs and remained in effect throughout the duration of his employment.

*B. Plaintiff's Actual Job Duties and Non-Exempt Status*

23. As Production Coordinator, Plaintiff's primary duties involved scheduling and coordinating roofing installation projects, performing job costing calculations, and supporting the production operations of the company. Plaintiff's duties were predominantly clerical in nature.

24. Plaintiff's duties did not include managing the enterprise or a customarily recognized department or subdivision of the enterprise within the meaning of the FLSA executive exemption. Rather, Plaintiff performed the day-to-day clerical and work tasks necessary to coordinate and schedule roofing projects, communicate with crews and other staff, and ensure jobs were properly set up for completion.

25. At no time during his employment did Plaintiff supervise or direct the work of two or more full-time employees. Plaintiff did not have subordinate employees reporting to him, and his role did not involve the regular supervision of other workers.

26. At no time during his employment did Plaintiff possess the authority to hire or fire other employees. Plaintiff was not involved in interviewing, selecting, or recommending candidates for employment, nor did he participate in disciplinary proceedings or termination decisions. Plaintiff had no power to make recommendations regarding hiring or firing that were given particular weight in Defendant's employment decisions.

27. Despite Plaintiff's actual job duties failing to satisfy the requirements for any FLSA exemption, Defendant classified Plaintiff as an exempt "executive" employee and refused to pay him overtime compensation for hours worked in excess of forty (40) per workweek.

28. To qualify for the executive exemption under the FLSA, an employee must satisfy all of the following four criteria: (1) the employee must be compensated on a salary basis of not less than $684 per week; (2) the employee must have the primary duty of managing the enterprise or a customarily recognized department or subdivision of the enterprise; (3) the employee must customarily and regularly direct the work of at least two or more other full-time employees; and (4) the employee must have the authority to hire or fire other employees, or the employee's suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees must be given particular weight. 29 C.F.R. § 541.100

29. While Plaintiff's salary of $1,500.00 per week exceeded the minimum salary threshold of $684 per week, Plaintiff failed to satisfy the remaining three criteria required for the executive exemption. Specifically: (a) Plaintiff's primary duty was not managing the enterprise or a recognized department thereof; (b) Plaintiff did not customarily and regularly direct the work of two or more full-time employees; and (c) Plaintiff did not have the authority to hire or fire employees, nor did his recommendations carry particular weight in such decisions.

30. As a result, Plaintiff was a non-exempt employee entitled to overtime compensation at a rate of one and one-half times his regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

*C. Defendant's Escalating Work Hour Demands*

31. Shortly after Plaintiff's salary increase to $1,500.00 per week, Defendant began requiring Plaintiff to work hours substantially in excess of the approximately forty (40) hours per week that had been represented at the time of hire.

32. Both Plaintiff's direct manager, Ali Jaffri, and Owner Robin Sherer repeatedly communicated to Plaintiff that he was expected to "do what it takes to get the job done, regardless of hours." These directives established Defendant's expectation that Plaintiff would work whatever hours were necessary to complete his assigned tasks, without regard to the impact on his total weekly hours.

33. In March and early April 2023, Plaintiff's work hours expanded such that he was consistently working from approximately 7:00 a.m. until 5:00 p.m. or 5:30 p.m. or later on weekdays.

34. By May 2023, Plaintiff was consistently working from 7:00 a.m. until 7:00 p.m. on weekdays, and occasionally until 9:00 p.m. at least two nights per week.

35. By July 2023, Plaintiff's hours had further increased such that he was consistently working from 7:00 a.m. until 7:00 p.m. daily, sometimes extending until 8:00 p.m. or 9:00 p.m., in addition to working six (6) to eight (8) hours per week on weekends.

36. When Plaintiff expressed concerns about his excessive hours and requested either a reduction in hours or an adjustment to his compensation, Robin Sherer directly told Plaintiff that he "was expected to work as needed to get the job done." Plaintiff's direct manager Ali Jaffri similarly communicated this expectation.

37. Beginning in August 2023, Plaintiff began strongly voicing to Owner Robin Sherer and to Defendant's Human Resources personnel the need to reduce his hours and/or adjust his compensation commensurate with the time and effort he was contributing. Multiple meetings were held during August and September 2023 to discuss these matters.

38. In early October 2023, Robin Sherer agreed verbally that he would either issue a bonus or provide Plaintiff with a raise to address the compensation disparity. Despite this verbal agreement, Defendant failed to provide either a bonus or a raise.

39. Following the October 2023 meetings, Plaintiff's hours continued to increase over subsequent weeks.

40. By December 2023 and into January 2024, Plaintiff's work schedule had expanded to approximately 6:00 a.m. to 5:00 p.m. Monday through Friday, plus twelve (12) to fifteen (15) hours on weekends, resulting in total weekly hours in the range of sixty-five (65) to seventy (70) hours or more.

41. Throughout his employment, Plaintiff routinely worked in excess of forty (40) hours per workweek, with his documented overtime hours totaling approximately 1,288 hours and 49 minutes.

42. Beginning in late August 2023, Plaintiff commenced tracking his own hours using a time-tracking application called Clockify, as Defendant had failed to

maintain any official time records for Plaintiff due to his classification as a salaried "exempt" employee. Plaintiff's contemporaneous time records documented his extensive overtime hours.

43. Plaintiff's detailed time records, supported by email timestamps from his work activities and activity logs from Defendant's company CRM system, demonstrate that Plaintiff consistently worked well in excess of forty (40) hours per workweek throughout his employment.

*D. Defendant's Failure to Pay Overtime Compensation*

44. Despite Plaintiff's status as a non-exempt employee entitled to overtime compensation under the FLSA, Defendant failed to pay Plaintiff any overtime wages for the hours he worked in excess of forty (40) hours per workweek.

45. Plaintiff's regular rate of pay was $37.50 per hour, calculated by dividing his weekly salary of $1,500.00 by forty (40) hours. Pursuant to the FLSA, Plaintiff was entitled to overtime compensation at a rate of $56.25 per hour (1.5 times $37.50) for all hours worked in excess of forty (40) in any workweek.

46. Based on Plaintiff's documented overtime hours of approximately 1,288 hours and 49 minutes, Defendant owes Plaintiff unpaid overtime wages in the amount of approximately $72,495.94, subject to further calculation and adjustment based on complete documentation of all hours worked.

47. Defendant willfully failed to maintain accurate time records for Plaintiff's hours worked, despite its obligation under the FLSA to do so. 29 U.S.C. § 211(c) requires employers to make, keep, and preserve records of employees' wages, hours, and other conditions of employment. By failing to require Plaintiff to log his hours

and by failing to implement any timekeeping system for Plaintiff, Defendant violated its statutory recordkeeping obligations.

48. Defendant's failure to maintain accurate time records creates a presumption in favor of Plaintiff's calculations of hours worked. Where an employer fails to keep proper records, an employee need only produce sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference, and the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence.

### E. Plaintiff's Protected Activity and Demand for Unpaid Wages

49. On January 19, 2024, Plaintiff submitted a formal written request to Robin Sherer and Defendant's management seeking compensation adjustment, including a pay increase and bonus, to address the substantial unpaid overtime hours Plaintiff had worked. In his written submission, Plaintiff detailed the extensive hours he had been working, the expansion of his duties following Ali Jaffri's departure, and the verbal promises made by Robin Sherer to address his compensation.

50. Plaintiff's January 19, 2024 submission constituted protected activity under Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), as it asserted Plaintiff's rights under the wage and hour laws and demanded compensation to which he was entitled.

51. On the same afternoon of January 19, 2024, Robin Sherer telephoned Plaintiff and stated outright that he would not pay the raise or bonus amount requested, declaring "I do not want to pay you more money for doing the same thing." Mr. Sherer indicated he would review the matter with the other owner, his mother Winnie Sherer, and provide a response by Monday, January 22, 2024.

52. Plaintiff did not receive any substantive response until Tuesday, January 23, 2024, when he received a text message stating that Robin Sherer and Winnie Sherer would "discuss the matter later in the day" and follow up by Wednesday, January 24, 2024.

53. Despite Plaintiff's repeated follow-up inquiries, Plaintiff received no further response until Tuesday, January 30, 2024 eleven (11) days after his formal submission at which time Robin Sherer sent Plaintiff an email fully rejecting any raise or bonus.

54. In his January 30, 2024 email rejection, Robin Sherer dramatically changed his position from his prior verbal acknowledgments that compensation adjustment was warranted. Mr. Sherer now claimed that "any hours" Plaintiff worked over forty (40) hours "were totally and completely volunteered by you" and that Defendant would not pay anything other than the original salary offered at the time of hiring.

55. Robin Sherer's January 30, 2024 email response represented a complete reversal of his prior acknowledgments and verbal commitments to address Plaintiff's compensation. Prior to Plaintiff's formal written demand, Mr. Sherer had repeatedly acknowledged verbally that Plaintiff's hours and compensation required adjustment;

only after Plaintiff formally asserted his wage rights did Mr. Sherer claim that all overtime hours were "volunteered."

56. In his January 30, 2024 email, Robin Sherer acknowledged the value Plaintiff brought to the company, stating: "We know the value you have brought to the company over the last year, that is without question." Despite this acknowledgment, Defendant refused to compensate Plaintiff for his overtime hours.

57. It was not until after Plaintiff submitted his formal written request for compensation on January 19, 2024, that Defendant first raised the claim that Plaintiff was an "executive" exempt from overtime pay. Prior to that date, no such classification or exemption had been communicated to Plaintiff, and Defendant's purported reliance on the executive exemption was a post hoc rationalization designed to avoid its overtime obligations.

### F. Defendant's Retaliatory Discharge of Plaintiff

58. Following Plaintiff's protected activity in demanding payment for unpaid overtime wages, Defendant terminated Plaintiff's employment on or about March 28th, 2024.

59. Defendant's termination of Plaintiff was in direct retaliation for Plaintiff's exercise of his rights under the FLSA, including his formal written demand for overtime compensation and his complaints regarding Defendant's wage and hour practices.

60. The temporal proximity between Plaintiff's protected activity on January 19, 2024, and his subsequent termination demonstrates a clear causal connection

between Plaintiff's assertion of his FLSA rights and Defendant's adverse employment action.

61. Defendant's stated reasons for Plaintiff's termination, to the extent any were provided, were pretextual and designed to mask the true retaliatory motive behind the adverse action.

62. Prior to Plaintiff's formal written demand for unpaid wages, Plaintiff had received no discipline or negative performance evaluations. Indeed, Robin Sherer acknowledged in his January 30, 2024 email that Plaintiff had provided "exemplary effort over and above the normal call of duty" and that Defendant recognized "the value you have brought to the company over the last year."

63. Defendant's retaliatory termination of Plaintiff caused Plaintiff to suffer economic damages including lost wages, lost benefits, and other consequential damages.

*G. Defendant's Pattern of Wage Violations and Willfulness*

64. Defendant's violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to recover unpaid overtime wages for a period of three (3) years prior to the filing of this Complaint.

65. An employer's violation of the FLSA is willful if the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.

66. Defendant knew or showed reckless disregard for whether its conduct violated the FLSA based on the following facts and circumstances:

a. Defendant deliberately classified Plaintiff as an "executive" exempt employee despite knowing that Plaintiff's actual job duties did not satisfy the requirements for any FLSA exemption;

b. Defendant intentionally failed to implement any timekeeping system for Plaintiff's hours, deliberately avoiding the creation of records that would document Plaintiff's overtime;

c. Robin Sherer, the Owner and CEO of Defendant, explicitly told at least one other employee that he had a "work around for the overtime" and that he would not pay overtime but would instead pay employees "under the table or through a different business entity";

d. At least five (5) other employees of Defendant approached Plaintiff with questions, concerns, or complaints about their pay and overtime, reporting that Defendant had either failed to pay them for overtime or had paid them only straight time for hours worked in excess of forty (40) hours per week;

e. Defendant has been involved in prior litigation with at least one other employee concerning similar wage and hour violations, demonstrating that Defendant had actual notice of its FLSA obligations and the unlawfulness of its compensation practices;

f. Defendant consistently directed Plaintiff to work whatever hours were necessary to complete his job duties, while simultaneously refusing to compensate him for hours worked in excess of forty (40) per week;

g. When Plaintiff formally demanded compensation for his unpaid overtime, Defendant reversed its prior acknowledgments and fabricated a post hoc claim that

Plaintiff had "volunteered" his overtime hours, demonstrating consciousness of guilt and an intentional effort to avoid its legal obligations.

67. Defendant's pattern and practice of violating the wage and hour rights of multiple employees, combined with Robin Sherer's explicit statements regarding "work arounds" for overtime obligations, establishes that Defendant's FLSA violations were knowing and willful rather than inadvertent or negligent.

68. Defendant's involvement in prior litigation with another employee regarding similar wage and hour issues put Defendant on actual notice of its obligations under the FLSA and the potential consequences of noncompliance, yet Defendant persisted in its unlawful practices.

*H. Unjust Enrichment*

69. Throughout Plaintiff's employment, Defendant received the benefit of Plaintiff's labor and services for approximately 1,288 hours and 49 minutes of overtime work.

70. Plaintiff conferred this benefit upon Defendant with the reasonable expectation that he would be compensated for his work in accordance with applicable law.

71. Defendant knowingly accepted and retained the benefit of Plaintiff's overtime labor without providing the compensation required by law.

72. Defendant has been unjustly enriched at Plaintiff's expense by receiving the value of Plaintiff's overtime services without paying the legally required overtime premium.

73. It would be inequitable and unconscionable for Defendant to retain the benefit of Plaintiff's unpaid labor without compensating Plaintiff for the value of the services rendered.

**COUNT I -VIOLATION OF THE FAIR LABOR STANDARDS ACT –**

**UNPAID OVERTIME WAGES (29 U.S.C. § 207)**

74. Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

75. At all times relevant to this Complaint, Defendant Company was an employer engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s), and its Co-Defendant Owners were employers under the act with control over payments to employees and knowledge of the violations.

76. At all times relevant to this Complaint, Plaintiff was an employee of Defendant company within the meaning of the FLSA, 29 U.S.C. § 203(e).

77. At all times relevant to this Complaint, Plaintiff was a non-exempt employee entitled to overtime compensation under the FLSA. Plaintiff did not fall within any exemption to the FLSA's overtime requirements, including the executive exemption codified at 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.100.

78. Section 207(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires that no employer shall employ any employee for a workweek longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40)

hours at a rate not less than one and one-half times the regular rate at which the employee is employed.

79. Throughout Plaintiff's employment with Defendant from January 16, 2023, through March 28th, 2024, Defendant required, suffered, and permitted Plaintiff to work in excess of forty (40) hours per workweek without compensating Plaintiff at the required overtime rate of one and one-half times his regular rate of pay.

80. Plaintiff's regular rate of pay was $37.50 per hour. Defendant was obligated to pay Plaintiff overtime compensation at the rate of $56.25 per hour for all hours worked in excess of forty (40) in any workweek.

81. Defendant failed to pay Plaintiff any overtime compensation for the approximately 1,288 hours and 49 minutes of overtime Plaintiff worked during his employment.

82. Defendant's failure to pay Plaintiff overtime compensation was willful within the meaning of 29 U.S.C. § 255(a). Defendant knew or showed reckless disregard for whether its failure to pay Plaintiff overtime compensation violated the FLSA.

83. As a direct and proximate result of Defendant's willful violation of the FLSA, Plaintiff has suffered damages in the form of unpaid overtime wages in an amount to be proven at trial, but estimated to be approximately $72,495.94.

84. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover his unpaid overtime wages, an equal amount as liquidated damages, reasonable attorneys' fees, and costs of this action.

85. Because Defendant's violations were willful, Plaintiff is entitled to recover unpaid overtime wages for the three-year period preceding the filing of this Complaint, pursuant to 29 U.S.C. § 255(a).

WHEREFORE Plaintiff Demands Unpaid overtime wages in an amount to be proven at trial, estimated to be approximately $72,495.94; Liquidated damages in an amount equal to the unpaid overtime wages, pursuant to 29 U.S.C. § 216(b); Lost wages and benefits resulting from Defendant's retaliatory termination; Liquidated damages equal to the lost wages and benefits resulting from retaliation, pursuant to 29 U.S.C. § 216(b); Front pay or, in the alternative, reinstatement; Pre-judgment and post-judgment interest at the applicable legal rate; Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and Such other and further relief as the Court deems just and appropriate.

## COUNT II

## VIOLATION OF THE FAIR LABOR STANDARDS ACT – RETALIATION (29 U.S.C. § 215(a)(3))

86. Plaintiff realleges and incorporates by reference 1 through 74 as though fully set forth herein.

87. Section 215(a)(3) of the FLSA, 29 U.S.C. § 215(a)(3), makes it unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted

any proceeding under or related to the FLSA, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

88. The anti-retaliation provision of the FLSA protects employees who assert their rights under the Act, including employees who make internal complaints to their employers regarding wage violations.

89. On January 19, 2024, Plaintiff engaged in protected activity under Section 215(a)(3) by submitting a formal written complaint to Defendant's management asserting his rights to compensation for the overtime hours he had worked. Plaintiff's written demand for unpaid wages constituted a complaint regarding Defendant's violation of the FLSA's overtime provisions.

90. Prior to submitting his formal written demand, Plaintiff had also engaged in protected activity by repeatedly raising concerns with Robin Sherer and Defendant's Human Resources personnel regarding his excessive hours and the need for compensation adjustment.

91. Defendant knew of Plaintiff's protected activity. Robin Sherer, the Owner and CEO of Defendant, personally received Plaintiff's written demand for compensation and personally communicated with Plaintiff regarding his wage complaints.

92. Following Plaintiff's protected activity, Defendant by its Owner Managers the co-defendants took adverse employment action against Plaintiff by terminating his employment on or about March 28th, 2024.

93. There is a direct causal connection between Plaintiff's protected activity and Defendant's adverse employment action. The temporal proximity between

Plaintiff's January 19, 2024 formal wage complaint and his subsequent termination demonstrates that Defendant's termination decision was motivated by Plaintiff's exercise of his FLSA rights.

94. Defendant's stated reasons for Plaintiff's termination, if any, were pretextual. Prior to Plaintiff's protected activity, Defendant had acknowledged Plaintiff's valuable contributions and "exemplary effort." The only material change in circumstances between Defendant's positive assessment of Plaintiff and his termination was Plaintiff's formal assertion of his wage and hour rights.

95. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered damages including, but not limited to, lost wages, lost benefits, emotional distress, and other consequential damages in an amount to be proven at trial.

96. Pursuant to 29 U.S.C. § 216(b), Plaintiff is entitled to recover damages caused by Defendant's retaliation, including lost wages and an equal amount as liquidated damages, together with reasonable attorneys' fees and costs.

97. Plaintiff is further entitled to equitable relief, including reinstatement or front pay in lieu thereof, as well as other appropriate injunctive relief.

WHEREFORE Plaintiff Demands Unpaid overtime wages in an amount to be proven at trial, estimated to be approximately $72,495.94; Liquidated damages in an amount equal to the unpaid overtime wages, pursuant to 29 U.S.C. § 216(b); Lost wages and benefits resulting from Defendant's retaliatory termination; Liquidated damages equal to the lost wages and benefits resulting from retaliation, pursuant to 29 U.S.C. § 216(b); Front pay

21

or, in the alternative, reinstatement; Pre-judgment and post-judgment interest at the applicable legal rate; Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and Such other and further relief as the Court deems just and appropriate.

### COUNT III  UNJUST ENRICHMENT (Florida Common Law)

98. Plaintiff realleges and incorporates 1 through 74 as though fully set forth herein.

99. This Count is pleaded in the alternative to the extent that Plaintiff's FLSA claims are found not to provide complete relief.

100.     Under Florida law, a claim for unjust enrichment requires: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for the defendant to retain the benefit without compensating the plaintiff.

101.     Plaintiff conferred a benefit on Defendant by providing approximately 1,288 hours and 49 minutes of overtime labor and services beyond his regular forty (40) hour workweek throughout his employment from January 16, 2023, through March 28th, 2024.

102.     Defendant voluntarily accepted and retained the benefit of Plaintiff's overtime labor. Defendant directed Plaintiff to work the overtime hours, accepted the work product and services Plaintiff provided during those hours, and profited from Plaintiff's efforts. Defendant's own records demonstrate substantial increases in company revenue during the period of Plaintiff's employment, with weekly company income increasing from approximately $47,771 per week in early 2023 to over $148,508 per week by September 2023.

103.     Defendant knowingly accepted the benefit of Plaintiff's overtime labor without paying the overtime compensation required by law. Defendant was aware that Plaintiff was working extensive overtime hours, as evidenced by Robin Sherer's verbal acknowledgments that Plaintiff's compensation should be adjusted and the repeated meetings held to discuss Plaintiff's hours and pay.

104.     It would be inequitable for Defendant to retain the benefit of Plaintiff's overtime labor without compensating Plaintiff for the value of the services rendered. Defendant received the full value of Plaintiff's work, including the coordination and scheduling services that contributed to the company's significant revenue growth, while refusing to pay Plaintiff the overtime premium to which he was entitled.

105.     The value of the benefit conferred upon Defendant by Plaintiff's unpaid overtime labor is equal to at least the overtime premium that should have been paid, calculated as $56.25 per hour multiplied by 1,288 hours and 49 minutes, totaling approximately $72,495.94.

106.     Plaintiff is entitled to recover from Defendant the value of the benefit unjustly retained, together with pre-judgment interest at the applicable statutory rate.

WHEREFORE Plaintiff Demands Incidental, and Consequential Damages, costs, expenses and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a

trial by jury on all issues so triable.

## VERIFICATION

I, Anthony Muse, declare under penalty of perjury pursuant to 28 U.S.C. § 1746

that I am the Plaintiff in this action and have personal knowledge of the facts set forth in

this Verified Complaint. I have read the foregoing Verified Complaint and know the

contents thereof.   The facts stated in this Verified Complaint are true and correct to the

best of my knowledge, information, and belief.

_____
Anthony Muse

Respectfully Submitted

Neil Bryan Tygar, P.A.
*/s/ Neil Bryan Tygar .*
Neil Bryan Tygar, Esq.
Florida Bar No. 0911100
5341 W. Atlantic Ave, #303
Delray Beach, FL 33484
(561) 455-0280
(561) 455-0281
ntygar@me.com
Email: neiltygarlaw@gmail.com